# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

RODNEY CHESTER PITTS, JR., #362143    *
           Petitioner,
      v.              *   CIVIL ACTION NO. JKB-15-295

LAURA ARMSTEAD, *et al.*,        *
           Respondents.
                *****

## MEMORANDUM

Petitioner Rodney Chester Pitts, Jr. (hereinafter referred to as "Pitts"), seeks habeas corpus relief pursuant to 28 U.S.C. § 2254, attacking the constitutionality of his 2010 convictions in the Circuit Court for Wicomico County. This matter has been fully briefed. ECF No. 25. Upon review, the court finds no need for an evidentiary hearing. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)). For reasons that follow, Pitts's petition for habeas corpus will be denied and dismissed with prejudice.

## Background and Procedural History

Pitts was indicted on May 10, 2010, and charged with solicitation to commit first-degree murder, solicitation to commit first-degree assault, solicitation to commit second-degree assault, solicitation to intimidate a witness, intimidation of a witness, and obstruction of justice. ECF No. 25, Filed Separately Exhibit No. 1. The charges arose out of letters Pitts sent to his girlfriend Latoya Robinson and his cousin Jordan Criner, while he was awaiting trial at the Wicomico County Detention Center ("WCDC") on a second-degree assault charge stemming from an altercation with Robinson. *Id.*, Filed Separately Exhibit 9. Pitts filed a motion to

suppress the letters to Criner, arguing that they were seized in violation of his Fourth Amendment rights. The motion was heard before Judge W. Newton Jackson on August 20, 2010. The Circuit Court denied the motion, finding that Pitts did not have an objectively reasonable expectation of privacy in the letters and, even if he did so, that expectation was outweighed by the Wicomico County Detention Center's reasonable security needs. ECF No. 25, Filed Separately Exhibit 2, p. 43.

Pitts's jury trial occurred over a two-day period from October 20 to October 21, 2010, with Circuit Court Judge Kathleen L. Beckstead presiding. *Id.*, Filed Separately Exhibits 3-4. The facts adduced at trial as recounted by the Court of Special Appeals of Maryland are as follows:

> While incarcerated at the WCDC awaiting trial on a second-degree assault charge arising from an altercation with Robinson, Pitts sent two letters to Robinson and two letters to Criner. These letters formed the basis of the charges before the circuit court. The letters to Robinson were date stamped January 5, 2010 and February 24, 2010. Both letters asked Robinson to drop her charges against Pitts and to refuse to testify against him. In the second letter to Robinson, Pitts also threatened to file perjury charges against Robinson's mother based on her expected testimony.

> On March 2, 2010, Pitts sent a letter to Criner, which asked Criner to take steps to prevent Robinson from testifying at Pitts's trial for second-degree assault. In the letter, Pitts suggested that Criner attack Robinson, kidnap her, shoot at her house, or kill her. Pitts told Criner that he could not think straight in jail. When Pitts placed the letter in the WCDC mail system, the letter was in a sealed envelope with Criner's address and Pitts's return address on the envelope.

> Prior to Pitts mailing the first letter to Criner, the WCDC began monitoring all of Pitts's outgoing mail pursuant to the WCDC's policy of reviewing the mail of validated gang members and those affiliated with validated gang members. Thus, when Pitts sent the first letter to Criner, Officer Richard Elliott, a member of the WCDC intelligence unit, intercepted the letter and read it as part of his regular duties. Upon determining that the letter discussed harming another person, Ofc. Elliott notified the Wicomico Bureau of Investigation ("WBI") and turned the letter over to Detective Taylor, of the Wicomico County Sheriff's Department, on assignment to the WBI. Det. Taylor subsequently

passed the letter on to Sergeant Cook, a member of the Maryland State Police Homicide Unit.

On March 5, 2010, Sgt. Cook and Trooper Steve Peters, of the WBI, visited Criner at his home. The two officers explained the contents of the letter to Criner and had Criner write a response which was dictated by Sgt. Cook. The response asked Pitts how much money he would pay if Criner performed the acts requested in Pitts's letter. Sgt. Cook hand-delivered the response to the WCDC with instructions to deliver the letter to Pitts and to be alert for future correspondence.

Several days later, Ofc. Elliott intercepted a second letter from Pitts to Criner. In this letter, Pitts instructed Criner not to kill Robinson; however, Pitts offered $300-$500 to have someone shoot at Robinson's parents' house, $300 to have Robinson shot in the leg, and $150 to have Robinson pistol-whipped. Ofc. Elliott turned the second letter over to Sgt. Cook, who sent both letters to the crime lab for analysis. On March 16, 2010, Ofc. Elliott searched Pitts's cell, seized several letters, and forwarded them to the crime lab.

ECF No. 25, Filed Separately Exhibit 9, pp. 3-6 (footnote omitted).

The jury heard testimony from WCDC Intelligence Officer Richard Elliott, Latoya Robinson, Maryland State Police (MSP) Crime Scene Technician Sam Woods, MSP latent print examiner expert Timothy Ostendarp, MSP forensic scientist Diane Lawder, Wicomico County Sheriff's Detective Chris Taylor, MSP Officer Scott Cook, and defendant Rodney Pitts. *Id*., Filed Separately Exhibits 3 & 4. On October 21, 2010, a jury acquitted Pitts of solicitation to commit first-degree murder, but found him guilty on the remaining counts. *Id*., Filed Separately Exhibit 4, pp. 210-11. On December 16, 2010, Circuit Court Judge Kathleen Beckstead sentenced Pitts to a term of twenty years' incarceration as to solicitation to commit first-degree assault, merged the other counts of solicitation to commit second-degree assault, solicitation to intimidate a witness, and intimidation of a witness, and sentenced Pitts to a five-year sentence on the obstruction of justice count, to run concurrently with the twenty–year sentence. *Id*., Filed Separately Exhibit 5, pp. 22-23.

On direct appeal to the Court of Special Appeals, Pitts, through counsel, raised the following claims:

I.     The motions court erred by failing to suppress sealed, outgoing mail from a pre-trial detention center, which was seized in violation of Mr. Pitts' Fourth Amendment rights.

II.    The trial court erred when it prevented the defense from eliciting testimony from Mr. Pitts that was probative of his intent, a central issue in the case.

III.   The trial court erred when it denied the defense motion for judgment of acquittal pertaining to direct witness intimidation, count five, because the evidence did not support the charge of direct witness intimidation "on or about" March 11, 2010.

ECF No. 25, Filed Separately Exhibit 6, p. 2.

In an unreported opinion filed on May 10, 2012, the Court of Special Appeals of Maryland affirmed Pitts's convictions, rejecting his claims of error. *Id.*, Filed Separately Exhibit 9. Pitts's self-represented petition for a writ of certiorari was summarily denied by the Court of Appeals of Maryland on August 21, 2012. ECF No. 25, Filed Separately Exhibits 10 & 11.

During the pendency of his direct appeal, Pitts filed a petition for post-conviction review in the Circuit Court for Wicomico County raising multiple claims of ineffective assistance of counsel. He subsequently supplemented his petition to present trial court error and prosecutorial misconduct grounds. ECF No. 25, Filed Separately Exhibits 12-13. On February 21 and July 11, 2013, Pitts appeared before Circuit Court Judge Leah J. Seaton for his post-conviction hearing. *Id.*, Filed Separately Exhibits 14-15. At the post-conviction hearing, Pitts testified regarding the ineffectiveness of trial counsel James Murray, trial court error, and prosecutorial misconduct. *Id.*, Filed Separately Exhibit 14, pp. 33-143. During the second day of the hearing,

Pitts's defense attorney, James Murray, testified. *Id.*, Filed Separately Exhibit 15, pp. 11-72. On July 31, 2013, Judge Seaton issued an exhaustive 34-page opinion denying post-conviction relief. Noting that Pitts had filed seven self-represented post-conviction petitions, some of which were filed after the commencement of the hearing, without counsel's signature and without a certificate of service, Judge Seaton only considered Pitts's original petition and his petition filed on January 24, 2013. *Id.*, Filed Separately Exhibit 16. Pitts's application for leave to appeal the denial of post-conviction relief raised claims that exculpatory evidence was withheld (a Google map); that the State failed to produce all of its evidence prior to trial; that the State failed to properly examine witnesses; that the trial court erred in failing to discharge the defense attorney; and that counsel failed to perform his duties. ECF No. 25, Filed Separately Exhibit 17. On September 14, 2014, the Court of Special Appeals of Maryland summarily denied the application. *Id.*, Filed Separately Exhibit 18.

In his original and supplemental federal petitions for writ of habeas corpus, filed prior to the respondents' answer, Pitts raises the following claims as generously construed by the court:[1] (1) his WCDC cell was subject to an illegal search and seizure; (2) the prosecution committed misconduct by (a) failing to correct Latoya Robinson's trial testimony regarding her unfamiliarity with his cousin Jordan Criner and the inconsistent statements of MSP Officer Cook regarding his control and production of letters, (b) withholding a video recording, "mail cover," gang-point sheet, and Google map as part of discovery, and (c) contaminating and tampering

---

[1]     Pitts has filed six supplemental petitions. The court has, to the best of its ability, attempted to clarify the issues by sorting his numerous claims into select categories. A seventh and eighth supplemental petition, filed after respondents' answer, retiterates, in part, previously filed ineffective assistance of counsel, prosecutorial misconduct, judicial misconduct, and illegal search and seizure grounds. ECF Nos. 37 & 50. To the extent that Pitts seeks to raise any new grounds, he is precluded from doing so.

with evidence; (3) defense counsel was ineffective as he (a) did not question the State's handwriting expert's conclusions that were made without obtaining a handwriting sample from Pitts, (b) had himself and Pitts stand during the course of the state's handwriting expert Diane Lawder's testimony, (c) did not obtain a handwriting expert, and (d) failed to file an additional discovery request in regard to a Google Map;[2] (4) the trial judge (a) was biased due to her familiarity with the evidence in his other criminal case and should have removed herself and (b) failed to grant his request for renewed counsel; (5) he received an illegal sentence; and (6) he was actually innocent of the offense. ECF Nos. 1, 6-8, 12, 20, & 23.

## THRESHOLD CONSIDERATIONS

### Timeliness, Exhaustion and Procedural Default

The respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, insofar as Pitts is reasserting his appellate and post-conviction issues, the claims are exhausted for the purpose of federal habeas corpus review.

Before a petitioner may seek habeas relief in federal court, he must exhaust each claim presented to the federal court by pursuing remedies available in state court. *See Rose v. Lundy*, 455 U. S. 509, 521 (1982). This exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); 28 U.S.C. § 2254(b) and (c).[3] In Maryland, this may be

---

[2]     Pitts also raises a supplemental claim that defense attorney Murray "performed poorly during trial." In the absence of delineating a specific deficiency with regards to counsel's representation, the court shall not address this habeas corpus claim.

[3]     Regarding exhaustion, § 2254 provides, in relevant part:

accomplished by raising certain claims on direct appeal and other claims by way of post-conviction proceedings. Exhaustion is not required if, at the time a federal habeas corpus petition is filed, petitioner has no available state remedy. *See Teague v. Lane*, 489 U.S. 288, 297-98 (1989).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing timely to note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U.S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U.S. 41, 46 (1972) (failure to raise claim during post-conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post-conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999). As the United States Court of Appeals for the Fourth Circuit has explained:

> If a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim. *See Coleman v. Thompson*, 501 U.S. 722,

---

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--
(A) the applicant has exhausted the remedies available in the courts of the State ...

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(b), (c).

731-32 (1991). A procedural default also occurs when a habeas petitioner fails to exhaust available state remedies and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Id*. at 735 n.1.

*Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits; or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.*, the conviction of one who is actually innocent.[4] *See Murray*, 477 U.S. at 495-96; *Breard*, 134 F.3d at 620. "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Breard*, 134 F.3d at 620 (quoting *Murray*, 477 U.S. at 488) (alteration in original). Even where a petitioner fails to show cause and prejudice for a procedural default, a court must still consider whether it should reach the merits of a petitioner's claims in order to prevent a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 314 (1995). A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer "available" to him. *See* 28 U.S.C. § 2254(b); *Engle v. Isaac*, 456 U.S. 107, 125-26, n.28 (1982).

---

[4] Habeas petitioners may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which they request habeas relief. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."); *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). Petitioners who wish to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted the petitioner in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006).

For reasons to be discussed, the court finds that several of Pitts's claims are procedurally defaulted.

## APPLICABLE LEGAL STANDARD

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet" and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v. Woodall*, __ U.S.__, __, 134 S. Ct 1697, 1702 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair minded disagreement.")); *Virginia v. LeBlanc*, __ U.S. __, __, 137 S. Ct. 1726, 1728 (2017).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent

and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Under the "unreasonable application" analysis of § 2254(d)(1), a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. 86, 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "Rather, that application must be objectively unreasonable." *Id*. Thus, "an unreasonable application of federal law is different from an incorrect application of federal law." *Id*. at 785 (internal quotation marks omitted). Further under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal habeas court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id*. "[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 599 U.S 766, 773 (2010).

The habeas statute provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell*, 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where

state courts have "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.* at 379.

## ANALYSIS

### "Illegal Search and Seizure" of Evidence.

Pitts challenges the search and seizure of letters from his WCDC cell. The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established and well-known to this court. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976) (footnotes omitted). Although *Stone* did not define the phrase "full and fair opportunity to litigate," this circuit has concluded:

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second,…when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978).

Pitts did challenge the validity of the search and seizure in a state court forum. A motion to suppress was filed on his behalf and argued by defense counsel Murray. On August 20, 2010, an extensive suppression hearing was held before Wicomico County Circuit Court Judge W.

Newton Jackson and the motion to suppress was denied.   ECF No. 25 at Filed Separately

Exhibit 2.

This issue was raised on direct appeal and rejected by the Court of Special Appeals.

After conducting an extensive review of caselaw and the suppression hearing, the intermediate

appellate court made the following statements:

> We hold that the State did not violate Pitts's Fourth Amendment rights
> when it searched and seized his sealed, outgoing mail.  Specifically, we assume
> without deciding that Pitts had a reasonable expectation of privacy in the contents
> of his sealed, outgoing mail, but we conclude that the State's legitimate security
> concerns justified the search, thus rendering it reasonable under the Fourth
> Amendment.  Accordingly, we hold that the circuit court correctly denied Pitts's
> motion to suppress.
>
> . . .
>
> First, we conclude that outgoing mail sent by someone suspected of being
> a gang member inherently affects the security of the facility, because of the
> possibility that the inmate is coordinating with other gang members who are not
> incarcerated but may seek to further some criminal enterprise.   These
> communications could reasonably pertain to the coordination of escape plans,
> directions to threaten or attack corrections personnel, or instructions on how to
> smuggle contraband into the facility, all of which implicate the State's legitimate
> concern for maintaining the security of its prisons.  We do not understand the
> State's interest in maintaining the security of its prisons to be confined to threats
> that arise within the prison walls.  Rather, the State's interest extends to protecting
> the integrity of the prison from outside threats as well as protecting corrections
> officers from both inmates and their associates outside of the facility.  Thus, the
> State acted reasonably in searching and seizing Pitts's letters to Criner, because
> the searching of outgoing mail sent by "validated gang members" furthers the
> State's interest in maintaining the security of its penal institution.
>
> Second, we disagree with Pitts's assertion that the State failed to meet its
> burden to prove that the search was reasonable, because it did not produce any
> evidence that Pitts presented a threat to the security of the WCDC.  "It is well
> established that the State has the burden of proving the legality of a warrantless
> search and seizure."  *Paulino v. State*, 399 Md. at 348 (citing *Sifrit v. State*, 383
> Md. 77, 114 (2004); *State v. Bell*, 334 Md. 178, 191 (1994); *Stackhouse v. State*.
> 298 Md. 203, 217 (1983)).  However, in *Thomas*, 285 Md. at 468, the Court of
> Appeals held that "even assuming the presence of some reasonable expectation of
> privacy with respect to the subject of a search…if the type of search is justified by

institutional, security concerns, *no 'level of cause' for any specific search is required for compliance with the Fourth Amendment*." (Emphasis added). Therefore the State was not required to present evidence that Pitts was a singular threat to the WCDC's security. Rather it had to present evidence that communications between inmates and individuals who were outside of the penal system could affect the security of the institution, which it accomplished through Ofc. Elliott's testimony at the suppression hearing. During redirect examination, Ofc. Elliott testified as follows:

> [State]: Is it possible that inmates could use the mail system to communicate with other gang members outside the detention center?
>
> [Ofc. Elliott]: Yes ma'am.
>
> [State]: Is it possible that those communications could concern [the] security and safety of the actual detention center itself?
>
> [Ofc. Elliott]: Very much so.

Ofc. Elliott's testimony justified the type of search conducted by correctional officers at the WCDC in its efforts to maintain security. The search was reasonable under the Fourth Amendment.

ECF No. 25, Filed Separately Exhibit 9, pp. 7-8, 12-13.

After review of the suppression hearing transcript and appellate court opinion (ECF No. 25, Filed Separately Exhibits 2 & 9), the court finds that Pitts clearly had a full and fair opportunity to litigate the legality of the searches and seizures of his mail in the Maryland courts. Thus, under *Stone*, Pitts's Fourth Amendment claim is barred from consideration here.

### Prosecutorial Misconduct

As best as the court can discern, Pitts's numerous habeas corpus petitions attack prosecutor Ross's performance, alleging misconduct by (a) failing to correct Latoya Robinson's inconsistent trial testimony and the inconsistent statements of MSP Officer Cook,

(b) withholding a video recording, "mail cover," gang-point sheet, and Google map as part of discovery, and (c) contaminating and tampering with evidence.[5]

## A. Inconsistent Statements

Pitts contends that the State failed to correct the inconsistent statements of Latoya Robinson during her trial court testimony. In her post-conviction ruling, Judge Seaton found the claim to be a bald allegation, without any factual or legal basis, writing,

> The Petitioner contends that the State's witness Latoya Robinson committed perjury because she allegedly told the investigating officer that she never met Jordan Criner. Yet, at trial, she testified that she had met Jordan Criner. In order to prevail on a claim that the State used perjury, the Petitioner must show both that perjury was committed and the State was aware that perjury was committed. *Abdullah v. State,* 49 Md. App. 141 (1981), *vacated on other grounds*, 202 Md. 637 (1982). It is the burden of the petitioner to prove that the State knowingly used perjury. In this instance Petitioner has shown neither. This is a bald allegation and there is no basis to grant relief.

ECF No. 25, Filed Separately Exhibit 16, pp. 31-32.

Pitts seemingly contends that MSP Officer Cook gave inconsistent statements about the dates in which he visited Pitts's cousin Jordan Criner. Judge Seaton addressed the issue in her post-conviction decision. She indicated:

> Although the Petitioner's testimony at the Post-Conviction hearing was rambling and unclear on this point, he seems to be contending that the date Sgt. Cook testified that he visited Mr. Criner differed from the date given in discovery. He also testified that Sgt. Cook had an inconsistency with the "tattoo situation." The Petitioner's testimony was not credible and the Petitioner failed to state how the alleged inconsistencies impacted the outcome of the case in any way. He has

---

[5] At one point during the pendency of this case, Pitts filed correspondence asking that the court solely consider his claim of prosecutorial misconduct for failing to correct Latoya Robinson's trial testimony regarding her familiarity with his cousin Jordan Criner. He asks the court to "disregard all other grounds." ECF No. 40. In another letter, however, he asks to move forward on two grounds of prosecutorial misconduct regarding "perjury/inconsistent statements" of two of the state's witnesses, Latoya Robinson and Scott Cook. ECF No. 41. He seemingly seeks to abandon all other claims. While the court appreciates Pitts's sudden wish to discard all but two of his grounds, all of his claims, as generously construed by the court, will be addressed.

failed to demonstrate prejudice or error, but rather, is merely commenting on his assessment of witness testimony. Accordingly, this is a bald allegation that does not provide a basis for relief.

ECF No. 25, Filed Separately Exhibit 16, p. 23.

The court has examined the trial and post-conviction transcripts and Judge Seaton's post-conviction decision and sees no basis for overturning her rulings regarding these issues under the provisions of §§ 2254(d) & (e).

**B. Withholding/Non-Disclosure of Evidence**

Pitts alleges that the prosecution failed to disclose a Google Map and videotape. On post-conviction review, Judge Seaton found Pitts's claim with respect to the Google map waived and meritless, stating the following:

> The Petitioner alleges that the State failed to disclose all exculpatory documents in this case. When asked what documents were withheld, the Petitioner testified as to only one document, the aforementioned google map that the Petitioner claims was seized from his cell and not provided by the State in discovery. The Petitioner's allegations regarding the google map have already been discussed herein. There is no evidence that the google map was either relevant or exculpatory. It was, in fact, a map of a route taken by the Defendant and the alleged victim in an entirely different case, and had no bearing on the relevant facts in this case, which concerned the Petitioner's alleged solicitation of murder and assault by mail sent from the Wicomico County Detention Center. Thus, even if there was a google map, and even if it was seized, it was not exculpatory. Thus, no exculpatory evidence was withheld. For that reason alone, this allegation does not establish a deficiency or provide a basis for granting relief. Further, this allegation could have been raised on direct appeal and was not. Hence the allegation is waived and relief cannot be granted on that basis. *See, Crim. Proc. Art. § 7-106(b); Adams v. State,* 171 Md. App. 668 (2006), *aff'd in part, reversed on other grounds,* 406 Md. 240 (2008).

ECF No. 25, Filed Separately Exhibit 16, p. 20.

Judge Seaton further opined:

> [T]he Petitioner testified that the following was not provided in discovery: all documentation of the handwriting expert, the video record, and the audio

15

footage that was recorded by the police while interviewing Jordan Criner in the covert vehicle.

The Court finds that the Petitioner has failed to prove that the State did not comply with all disclosure requirements. At the Post-Conviction hearing, the discovery packet (Exhibit D16) that the State provided to the Petitioner was admitted into evidence. Further, the Court took a recess to allow all counsel to review all documents and materials available on the date of the Post-Conviction hearing. Trial Counsel testified that he had produced all the documents received in two criminal cases concerning the Petitioner, including the case at issue, concerning the Petitioner. Further, Ms. Schultz testified as to which documents were relevant and admitted into evidence, and that all documents had been provided to the defense. There is no evidence whatsoever that there were videos, audio records or documents that were not disclosed. In addition, this alleged discovery allegation should have been raised on direct appeal and was not. Hence the allegation was waived. *See, Adams v. State*, 171 Md. App. 668 (2006), *aff'd in part, reversed on other grounds*, 406 Md. 240 (2008).

ECF No. 25, Filed Separately Exhibit 16, p. 22.

The court concludes that as the state court found Pitts's claim waived, and as Pitts has failed to show cause and prejudice or actual innocence, the ground is procedurally defaulted.

Alternatively, in *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. The Court subsequently held that the prosecution's duty to disclose favorable evidence is not dependent upon a request from the accused. *See United States v. Agurs*, 427 U.S. 97, 107 (1976). Evidence is favorable to the accused under *Brady* "if it would tend to exculpate him or reduce the penalty...." *Id.* at 87-88. The duty of disclosure is not limited to evidence of which the prosecutor is aware. Rather, it also includes "evidence known only to police investigators and not to the prosecutor." *Kyles v. Whitley*, 514 U.S. 419, 438 (1995). Thus, under *Brady*, "the individual prosecutor has a duty to learn of any favorable

16

evidence known to the others acting on the government's behalf in the case, including the police." *Id.* at 437. In order for a failure to disclose exculpatory or favorable evidence to rise to a constitutional level, there must be a reasonable probability that the results of the proceeding would have been different had the evidence been disclosed. *See United States v. Bagley*, 473 U.S. 667, 682 (1985).

The court takes notice that during the post-conviction hearing testimony, defense counsel Murray testified that there was no exculpatory evidence withheld by the State. ECF No. 25, Filed Separately Exhibit 15, pp. 19 & 26. The Google map, allegedly provided to Pitts by his defense attorney in the independent second-degree assault case, was not relevant to issues in his solicitation case. *Id.* Pitts has failed to articulate a claim for relief under 28 U.S.C. § 2254.

### C. Contamination of Letter Evidence

Pitts contends that the State mishandled letters so as to contaminate them and fabricated fingerprint evidence. Respondents argue that as the claim was not raised at the appellate level or on post-conviction review, it is procedurally defaulted. The court agrees and finds that it not subject to review.

### Ineffective Assistance of Counsel

When a petitioner alleges a claim of ineffective assistance of counsel, he must show both "that counsel's performance fell below an objective standard of reasonableness and that [his defense] was prejudiced as a result of counsel's conduct." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). The second prong requires the court to consider whether there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A strong presumption of adequacy attaches to counsel's conduct, so strong in fact that a petitioner alleging ineffective assistance of counsel must show

that the proceeding was rendered fundamentally unfair by counsel's affirmative omissions or errors. *Id*. at 696. Although "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," it is equally true that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. at 690-91. Where circumstances are such that counsel should conduct further investigation to determine "whether the best strategy instead would be to jettison [a chosen] argument so as to focus on other, more promising issues," failure to conduct further investigation can amount to constitutionally deficient assistance. *See Rompilla v. Beard*, 545 U.S. 374, 395 (2005) (O'Connor, J., concurring). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment, and the burden to show that counsel's performance was deficient rests squarely on the defendant. *See Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 17 (2013). Further, "[i]n cases where a conviction has been as a result of trial, the defendant must demonstrate that but for counsel's errors, there is a reasonable probability that he would not have been convicted." *United States v. Luck*, 611 F.3d 183, 186 (4th Cir. 2010).

A showing of prejudice requires the petitioner to establish that (1) counsel's errors were so serious as to deprive the defendant of a fair trial whose result is reliable, and (2) there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 687, 694. "The benchmark [of an ineffective assistance claim] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. It is not enough "to show that the errors had some conceivable effect on the

outcome of the proceeding." *Id*. at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687; *Harrington*, 131 S. Ct. at 787–88 (citing *Strickland*, 466 U.S. at 687). A determination need not be made concerning the attorney's performance if it is clear that no prejudice would have resulted had the attorney been deficient. *Strickland*, 466 U.S. at 697. The undersigned notes that "when a petitioner's habeas corpus claim is based on alleged ineffective assistance of counsel…the Antiterrorism and Effective Death Penalty Act ('AEDPA') standard[6] and the Strickland standards are dual and overlapping, and we apply the two standards simultaneously rather than sequentially." *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012) (citing *Harrington v. Richter*, 131 S. Ct. 770 (2011)).

Pitts claims that defense attorney James Murray was ineffective as he (a) did not question the State's handwriting expert's conclusions, made without obtaining a handwriting sample from Pitts, (b) had himself and Pitts stand during the course of the state's handwriting expert Diane Lawder's testimony, (c) did not obtain a handwriting expert, and (d) failed to file an additional discovery request in regard to a Google Map. The court shall review each ineffective assistance claim.

---

[6]     Under AEDPA, federal courts may not grant a petitioner's habeas petition where the state court adjudicated the petitioner's habeas corpus claims on the merits unless the state court's decision "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *see also Lee v. Clark*e, 781 F.3d 114, 122 (4th Cir. 2015).

## A. Examination of Handwriting Expert

Judge Seaton rejected Pitts's claims that trial counsel was ineffective.  As to Pitts's claim that Murray did not question the handwriting expert as to her conclusions without Pitts having given a handwriting sample, Judge Seaton found:

> At the post-conviction hearing, the Petitioner testified that there was only one specific question he wanted Trial Counsel to ask.  In particular, the Petitioner wanted questions asked of the handwriting expert as to how the handwriting expert was able to compare the Petitioner's handwriting when Petitioner had never given a handwriting sample.  The underlying premise of this question is false.  At the hearing, the handwriting expert testified that she was asked to make a comparison between the "…questioned…" handwriting in the letters and envelopes and "…the known writing of the suspect."  [Trial Transcript, Day 1, p. 238].

ECF No. 25, Filed Separately Exhibit 16, p. 14.

## B.  Prejudice Due to Defendant's Standing During Witness Testimony

Pitts additionally claims that Murray had Pitts and himself stand during expert witness Diane Lawder's testimony, which may have affected the jury's determination.   Judge Seaton examined this issue and found the allegation to be erroneous.  She observed:

> The Court finds this allegation to be false.  At the Post-Conviction hearing, Trial Counsel credibly testified that he did not have Petitioner stand during Ms. Lawder's testimony.  The Court finds Trial Counsel's testimony to be credible.   The Court does not find the Petitioner's testimony to be credible.  Therefore, this allegation does not provide a basis to grant relief.

ECF No. 25, Filed Separately Exhibit 16, pp. 29-30.

## C.  Handwriting Expert as Defense Witness.

In regard to the claim that counsel failed to call a handwriting expert, Judge Seaton stated:

> The Petitioner alleges that Trial Counsel failed to call witnesses, as requested by the Petitioner. The witnesses were: Barbara Banes – his mother, Jenny Davis - his grandmother, a handwriting expert, and a DNA expert.

Regarding the DNA expert, when discussing this allegation, the Petitioner testified that he was really requesting a fingerprint expert. The Petitioner contended that these witnesses would have testified that his handwriting did not match the writing on letters that were admitted into evidence, and that his fingerprints were not on the letters. Trial Counsel testified that a handwriting expert was hired and that his testimony would not have been helpful to the defense since the expert opined that the Petitioner wrote the letters in question. In light of the opinions of two handwriting experts, Trial Counsel further concluded that hiring a fingerprint expert would not be useful. Although he was requesting a fingerprint expert, the Petitioner also testified at the Post-Conviction hearing that he never contested that his fingerprints would be on the paper that the letters were written on because he gave the paper to the individual who the Petitioner believes may have written the letters. Standing alone, this undermines the need to call another fingerprint expert. With regard to Ms. Banes and Ms. Davis, Trial Counsel credibly testified that he spoke to both individuals and neither knew anything about the case. As a result, Trial Counsel concluded that they would not be beneficial as witnesses.

The Court finds the testimony of Trial Counsel, James Murray, to be credible and that Trial Counsel made rational and sound tactical decisions regarding all the requested witnesses. If Trial Counsel has a sound tactical reason for his action, a court may not consider the action deficient. *State v. Matthews*, 58 Md. App. at 245. Further, the Court cannot find that ineffective assistance of counsel existed if counsel either reasonably investigated or made a reasonable decision "that [made] particular investigations unnecessary." *Cirincione v. State*, 119 Md. App. 471, 486 (1998).

. . .

Trial Counsel further credibly testified, as noted previously herein, that he spoke with witnesses proposed by the Petitioner, hired a handwriting expert, and asked all reasonable, relevant questions requested by the Petitioner. The fact that Trial Counsel made sound tactical determinations, such as determining that the absent google map was irrelevant, does not mean that Trial Counsel's representation was deficient.

ECF No. 25, Filed Separately Exhibit 16, pp. 12-13 & 17.

Defense Attorney Murray testified at the post-conviction hearing that he hired a handwriting expert, who reviewed documents and gave an opinion that was not helpful to Pitts's case. Thus, the expert was not called as a witness at trial. *Id.*, Filed Separately Exhibit 15, pp. 27-29.

## D. Filing of Additional Discovery

Finally, Pitts claims that Murray was ineffective for failing to file an additional discovery request in regard to a Google Map. Judge Seaton found as a finding of fact that "Trial Counsel determined that a google map that may or may not have been in Petitioner's cell when it was searched was not relevant to the issues before the court in this trial." ECF No. 25, Filed Separately Exhibit 16, p.11, ¶47. The post-conviction court further opined:

> The only question is whether trial counsel made a reasoned tactical decision about the google map. Trial Counsel considered Petitioner's assertions about the google map and determined that the google map was irrelevant to the case. There was nothing deficient about this conclusion. Indeed, it is difficult to understand how the existence of a map to the victim's location would be exculpatory. At the very least, it would just as likely prove the opposite of what the Petitioner posits; namely, that it would just as easily prove that he intended to do the victim harm. But more importantly, it cannot be said that Trial Counsel's conclusion that the google map was irrelevant constituted a deficiency. Finally, there is no credible evidence that Officer Elliott ever found or seized a google map, that the State ever had or withheld a google map or that the google map had any relevance whatsoever to this case.

ECF No. 25, Filed Separately Exhibit 16, pp. 17-18.

The court has examined the post-conviction record and finds no basis to overturn Judge Seaton's decisions with regards to the effectiveness of James Murray's representation under § 2254(d).

## Trial Court Bias

Pitts claims next that he is entitled to relief because he was tried before Judge Beckstead, who was inherently biased against him because she had presided over one of his earlier trials involving second-degree assault and because she failed to grant his request for renewed counsel. The state post-conviction court reviewed these claims and denied them for the following reasons:

> In this case, the Petitioner was charged with solicitation of murder and other charges while he was in the Wicomico County Detention Center awaiting

trial on charges of assault against Latoya Robinson. Ms. Robinson was the victim in the assault case. She is also the victim in this case. While the assault charges were pending, the Petitioner allegedly sent the letters that gave rise to the charges in this case. The Petitioner contends that Judge Beckstead should have recused herself from presiding over the jury trial in this case because she also presided over the jury trial on the assault charges. The Petitioner testified that he sent a letter to Trial Counsel after the jury was sworn, requesting that Judge Beckstead recuse herself. At the Post-Conviction hearing, the Petitioner testified that Judge Beckstead should have recused herself because she was familiar with the evidence, having presided over the prior trial concerning the assault on Latoya Robinson.

The Petitioner is incorrect. Both trials were jury trials, and the jury, not the judge, was the trier of fact in each case. Judge Beckstead was not required to recuse herself, and the record is devoid of any evidence of bias. In his testimony, Trial Counsel testified that there was no basis whatsoever to request recusal. This is a bald, unsupported allegation and does not provide a basis to grant relief. *See, Cirincione v. State*, 119 Md. App. 471, 505 (1998); *Duff v. Warden*, 234 Md. 646, 648 (1964); *Barbee v. Warden of Maryland Penitentiary*, 200 Md. 647, 650 (1958).

ECF No. 25, Filed Separately Exhibit 16, p. 29.

With regard to the trial court's decision regarding Pitts's request to dismiss counsel,

Judge Seaton declared:

At the commencement of the trial, the Petitioner did not request to discharge his Trial Counsel. Rather, he requested a postponement because of poor communication with Trial Counsel and because Trial Counsel had not subpoenaed witnesses and evidence, as he had requested. [Trial Transcript, Day 1, p. 4-5]. Judge Beckstead then had a long, thorough discussion with Petitioner and Trial counsel, in which she explored whether there had been adequate time for preparation, complete communication and whether Trial Counsel was ready for trial. The Petitioner informed her that he had provided all information and Trial Counsel informed her that he was ready for trial. Judge Beckstead explained to the Petitioner that he had the right to represent himself. [Trial Transcript Day 1, p. 4-18]. Thus, there was no request to discharge Trial Counsel. Further, Judge Beckstead considered the request for postponement, and denied the request. Her denial of the postponement was not raised on direct appeal, and therefore, pursuant to Criminal Procedure Article § 7-106(b), it has been waived and cannot be raised in a Post-Conviction proceeding.

ECF No. 25, Filed Separately Exhibit 16, p. 19.

The court has reviewed all transcripts and finds no reason to overturn Judge Seaton's rulings under §§ 2254(d) & (e).

### Illegal Sentence and Actual Innocence

In supplemental petitions, Pitts raised grounds of an illegal sentence, alleging he was sentenced outside of the sentencing guidelines set out in the state pre-sentence investigation, and actual innocence of the charges based upon his failure to receive a letter from his cousin, Jordan Criner, and the false and perjured testimony from state witnesses. ECF Nos. 12 & 23. These grounds shall be denied for a variety of reasons. First, after extensive review of the record, the Court finds that the claims were not raised and examined at the state court level. They are therefore defaulted and are not subject to review here. Moreover, Pitts's illegal sentence claim fails to show a basis for relief. He does not allege how this ground violates his rights under federal laws. *See Wilson v. Corcoran*, 562 U.S. 1 (2010) (no basis for federal habeas corpus relief for state inmate in absence of determination of violation of federal law).

Finally, Pitts's claim of actual innocence is belied by the overwhelming evidence, including witness testimony and verified documents, produced against him at trial.[7]

---

[7] To the extent that's Pitts's claim of actual innocence may be examined with regard to claims that have been procedurally defaulted under *Schlup*, Pitts has not made a proper showing that declining to consider the grounds will result in a fundamental miscarriage of justice. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. 298 at 324. Moreover, in order to use actual innocence as a gateway to raising an otherwise defaulted constitutional claim, a petitioner must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted him in light of the new evidence. *See Buckner*, 453 F.3d at 199-200. Pitts has not made such a showing. The court rejects Pitts's actual innocence gateway argument.

# CONCLUSION

For the reasons stated herein, the court will deny and dismiss the petition with prejudice. Additionally, a certificate of appealability is not warranted as it may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pitts "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003); *see also Buck v. Davis,* ___U.S. ___, 137 S. Ct. 759, 773-74 (2017). Because this court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c)(2). Denial of a certificate of appealability in the district court does not preclude Pitts from requesting a certificate of appealability from the appellate court.

Dated this 6th day of March, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge